UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANNY PANCIERA and MARCIA PANCIERA,<br>    *Plaintiffs*,<br>         *v.*<br>KEMPER INDEPENDENCE<br>INSURANCE COMPANY,<br>    *Defendant*. | Civil No. 3:13cv1009 (JBA)<br><br>April 29, 2014 |

**RULING ON PARTIAL MOTION TO DISMISS**

This action arises out of an insurance coverage dispute between Plaintiffs Danny and Marcia Panciera ("the Pancieras") and Defendant Kemper Independence Insurance Company ("Kemper") relating to Kemper's denial of coverage for damage to the foundation of the Pancieras' home. In their Second Amended Complaint, Plaintiffs bring claims against Defendant for breach of contract (Count One); breach of the implied covenant of good faith and fair dealing (Count Two); and violations of the Connecticut Unfair Insurance Practices Act ("CUIPA"), Conn Gen. Stat. § 38a-815, *et seq.*, and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a, *et seq.* (Count Three). Kemper now moves [Doc. # 33] to dismiss counts Two and Three, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim for which relief can be granted, arguing, with respect to Count Two, that Plaintiffs have failed to allege sufficient facts to show that Defendant acted in bad faith, and with respect to Count Three, that Plaintiffs have failed to allege sufficient facts to show that Defendant had a general business practice of improperly denying claims similar to theirs.[1] For the following reasons, Defendant's partial motion to dismiss is denied.

---

[1] Plaintiff has filed a motion [Doc. # 38] to compel discovery with respect to these claims, which will be addressed in a separate order. Defendant moved [Doc. # 42] to stay

I.     **Background**

In August 2008, the Pancieras purchased the residential property located at 4 Lindsey Lane, Willington, Connecticut, which was constructed in 1989. (2d Am. Compl. [Doc. # 30] ¶ 4.) At that time, they purchased a Homeowner's Insurance Policy from Kemper for their residence, which was automatically renewed up to the present day upon their timely payment of their insurance premiums. (*Id.* ¶¶ 5–6; *see also* Homeowner's Insurance Policy, Ex. A to 2d Am. Compl.) In April 2013, the Pancieras observed a series of horizontal and vertical cracks on most of the basement walls in their home and immediately undertook an investigation into the cause of the condition. (2d Am. Compl. ¶¶ 8–9.) Plaintiffs discovered that the "pattern cracking" in their basement was due to a chemical compound found in basement walls constructed in the late 1980s and early 1990s, likely consisting of concrete from the J.J. Mottes Concrete Company. (*Id.* ¶ 10.) The concrete used by J.J. Mottes Concrete Company during that time period contained a chemical compound that oxidizes and expands over time, eventually reducing the concrete to rubble. (*Id.* ¶ 12.) This oxidizing process has rendered the basement walls of the Panciera's home structurally unsound, and it is only a matter of time until those walls collapse and the entire home falls into the basement. (*Id.* ¶¶ 13–15.) On April 15, 2013, after soliciting repair estimates from contractors, Plaintiffs contacted Kemper regarding the condition of their basement walls and made a timely claim for coverage pursuant to the terms of their Homeowner's Insurance Policy. (*Id.* ¶¶ 16–17.) Based on contractors' estimates, the cost of replacing Plaintiffs' basement walls and related restoration work is expected to be at least $175,000. (*Id.* ¶ 23.) On April 19, 2013, Defendant sent a field

---

discovery on Counts Two and Three pending the Court's ruling on the motion to dismiss, which the Court granted at oral argument.

adjuster to the Pancieras' home to investigate their claim. (*Id.* ¶ 18.) The field adjuster determined that the damage to Plaintiffs' foundation was "a result of settlement and faulty construction and/or building material." (*See* Denial Letter, Ex. B to 2d Am. Compl.)

On May 7, 2013, Kemper denied coverage of Plaintiffs' claim. (*Id.* ¶ 19; *see also* Denial Letter.) In the Denial Letter, Defendant pointed to policy exclusions for damage caused by "wear and tear, marring, deterioration; inherent vice, latent defect, mechanical breakdown . . . settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings," or by "[f]aulty, inadequate, or defective . . . materials used in repair, construction, renovation or remodeling." (Denial Letter at 1–2 (citing Homeowner's Insurance Policy at 8–9, 11).) The Denial Letter does not reference the Homeowner's Insurance Policy provision stating that collapse[2] is covered under the policy if it is the result of "hidden decay" or the use of "defective material or methods in construction, remodeling or renovation." (Homeowner's Insurance Policy at 6.) Plaintiffs allege that Defendant denied coverage of their claim despite the fact that Defendant's field adjuster determined that the damage to their foundation was caused by a peril covered under the collapse provision of their policy. (*Id.* ¶ 35.) Plaintiffs further allege that Kemper deliberately cited to inapplicable sections of the Homeowner's Insurance Policy when denying their claim in order to deceive the Pancieras and prevent them from receiving the benefits to which they were entitled under the policy. (*Id.* ¶¶ 33–35.)

---

[2] Under Connecticut law, "collapse" includes a substantial impairment to the structural integrity of a building. *See Beach v. Middlesex*, 205 Conn. 246, 252 (1987).

Defendant participates in the Insurance Services Office, Inc. ("ISO") which is "a cooperative organization formed and controlled by its participants for the purpose, among others, of collecting data on claims made in defined geographic areas." (*Id.* ¶ 42.) The ISO also drafts insurance policy provisions for its participants and prepares advisory interpretations of the meanings of those provisions. (*Id.* ¶ 43.) Defendant's participation in the ISO is not disclosed to Defendant's policyholders. (*Id.* ¶ 44.) Through the ISO, Defendant has knowledge of the number of claims in Northeastern Connecticut similar to the Pancieras' claim that have arisen from the use of defective concrete in pouring the foundations of homes in the region. (*Id.* ¶ 45.) Defendant similarly has knowledge through the ISO that most of the insurers facing such claims have attempted to deny coverage by citing the same exclusions that Defendant relied on in denying Plaintiffs' claim, and is aware that such attempts have been rejected by courts in this state. (*Id.* ¶¶ 46–47; *see, e.g., Bacewicz v. NGM Insurance*, No. 3:08-CV-1530 (JCH).) Plaintiffs allege that by denying their claim, Defendant has confirmed its participation in an industry-wide practice by ISO participants to deny coverage for "concrete decay" claims for which Defendant's liability has become reasonably clear. (*Id.* ¶¶ 49–51.)

II.   **Discussion**[3]

Defendant moves to dismiss counts Two and Three of the Second Amendment Complaint, arguing: 1) with respect to the claim for breach of the implied covenant of

---

[3] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Conclusory allegations are not sufficient. *Id.* at 678–79; *see also* Fed. R. Civ. P. 12(b)(6).

good faith and fair dealing in Count Two that Plaintiffs have failed to sufficiently plead that Defendant acted with bad intent in denying their claim and 2) with respect to the CUIPA/CUTPA claim in Count Three, that Plaintiffs have failed to plead sufficient facts to show that Defendant had a general business practice of denying claims for collapse due to faulty concrete.  Plaintiffs counter that they have pled sufficient facts to satisfy the pleading standard with respect to these two elements.

      **A.**      **Breach of the Implied Covenant of Good Faith and Fair Dealing**

In Count Two, Plaintiffs allege that Defendant breached the implied covenant of good faith and fair dealing when it denied their insurance claim.  Under Connecticut law, "it is axiomatic that the duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship." *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 432 (2004) (internal citations and quotation marks omitted). "[E]very contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." *Id.* (internal citations and quotation marks omitted).  "The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term." *Id.* at 433 (internal citations and quotation marks omitted).  "Although the covenant of good faith and fair dealing is implied in every contract, a plaintiff cannot state a claim for breach of the implied covenant simply by alleging a breach of the contract, in and of itself.  Instead, to state a legally sufficient claim for breach of the implied covenant sounding in contract, the plaintiff must allege that the defendant acted in bad faith." *Blumberg Assocs. Worldwide, Inc. v. Brown & Brown of Conn., Inc.*, 132 Conn. App. 85, 99 (2011) (internal citations omitted).  "If the plaintiff fails to set forth

factual allegations that the defendant acted in bad faith, a claim for breach of the implied covenant will not lie." *Id.*

Defendant argues that Plaintiffs have failed to allege that Kemper acted in bad faith in denying their claim. The Connecticut Supreme Court has explained that "[b]ad faith generally implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested motive." *De La Concha of Hartford*, 269 Conn. at 433 (internal citations and quotation marks omitted). "Bad faith means more than mere negligence; it involves a dishonest purpose." *Id.* (internal citations and quotation marks omitted). "A [p]laintiff must show that he is entitled to recover under a policy before he can recover for the bad faith denial or processing of an insurance claim. However, the burden of proving that there is an exception to a risk is on the insurer . . . [and] the insurer must prove with a high degree of certainty that an exclusion clause is applicable. *Davis v. Globe Life &Acc. Ins. Co.*, Civil Action No. 3:12-CV-01583 (VLB), 2013 WL 5436907, at *4 (D. Conn. Sept. 27, 2013) (internal citations and quotation marks omitted). "A plaintiff cannot recover for bad faith if the insurer denies a claim that is fairly debatable, i.e., if the insurer has some arguably justifiable reason for refusing to pay or terminating the claim." *Id.* (internal citations and quotation marks omitted).

Plaintiffs counter that they have alleged sufficient facts to support the inference that Defendant acted in bad faith when denying their claim. Specifically, Plaintiffs allege that Defendant's field adjuster determined that the damage to their foundation was caused by a risk insured against under the collapse coverage section of their policy, but that Defendant nonetheless denied coverage, purporting to rely on an unrelated exclusion

in the denial letter in a deliberate attempt to mislead Plaintiffs, who are unsophisticated insurance consumers, and deter them from pursuing coverage under the policy. (*See* 2d Am. Compl. ¶¶ 28–29, 33–36.) Plaintiffs argue that in doing so, Defendant violated the public policy considerations of CUIPA, which prohibits insurance companies from "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue." Conn. Gen. Stat. § 38a-816(6)(A). Courts in this district have previously applied the public policy embodied in CUIPA when evaluating the sufficiency of a bad faith denial of insurance claim. *See Davis*, 2013 WL 5436907, at *4; *see also Uberti v. Lincoln National Life Ins. Co.*, 144 F. Supp. 2d 90, 104 (D. Conn. 2001).

In the Second Amended Complaint, Plaintiffs have alleged that Defendant cited an inapplicable policy exclusion, while failing to disclose the collapse coverage under which Plaintiffs' claim should have been covered. Plaintiffs allege that in so doing, Defendant acted with a "design to deceive," *De La Concha of Hartford* at 433, and in violation of stated Connecticut public policy, which forbids insurers from misrepresenting the terms of insurance contracts. Furthermore, Plaintiffs have incorporated by reference into Count Two their allegations that Defendant colluded with other members of the ISO to uniformly deny collapse claims related to faulty concrete, despite several cases determining that such claims are covered by policies identical to Plaintiffs' policy, in violation of CUIPA and CUTPA. When taken together, such facts are sufficient to plausibly allege that Defendant acted in bad faith in denying Plaintiffs' claim. Therefore, Defendant's motion to dismiss Count Two is denied.

    A.    **Violations of CUIPA/CUTPA**

In Count Three, Plaintiffs allege that Defendant violated CUIPA/CUTPA by failing to effectuate the prompt and equitable settlement of their claim, in which liability

had become reasonably clear.  Under Connecticut Law, it is well settled that a denial of a single claim cannot form the basis of a CUIPA/CUTPA claim, even if the denial involved multiple unfair acts.  *See Lees v. Middlesex Ins. Co.,* 229 Conn. 842, 849 (1994) ("[T]he defendant's alleged improper conduct in the handling of a single insurance claim, without any evidence of misconduct by the defendant in the processing of any other claim, does not rise to the level of a 'general business practice' as required by [CUIPA]."); *see also, e.g., Martin v. Am. Equity Ins. Co.,* 185 F. Supp. 2d 162, 168 (D. Conn. 2002) ("[T]he law in Connecticut is clear that CUIPA . . . does not cover isolated instances of insurer misconduct." (citing *Lees,* 229 Conn. at 849)).  Defendant argues that Plaintiffs have failed to allege the existence of any other denial of a similar insurance claim by Defendant, and that therefore their CUIPA/CUTPA claim must fail.

Plaintiffs argue that it would be unfair to require them to allege similar specific claim denials without access to discovery from Defendant, which is the only party that could reasonably be expected to have knowledge of its general claim practices and specific claim denials.  In support of their argument, Plaintiffs cite several Connecticut cases that have held that a bare allegation of a "general business practice" without specific instances of insurer misconduct is sufficient to survive a motion to strike.  *See Active Ventilation Products, Inc. v. Property & Cas. Ins. Co. of Hartford*, No. X09CV085023757, 2009 WL 2506360, at *4 (Conn. Super. Ct. July 15, 2009); *Jones v. Standard Fire Ins. Co.*, No. TTDCV116004270S, 2013 WL 541015, at *2 (Conn. Super. Ct. Jan. 11, 2013).  However, these cases applied the Connecticut pleading standard, rather than the standard announced in *Iqbal* and *Twombly*, which requires more than the bare conclusory allegations accepted by the state courts in the cases cited by Plaintiffs.  Under *Iqbal*, the

mere allegation that conduct constitutes a general business practice, without any supporting facts, likely would fail to state a CUIPA/CUTPA claim.

However, Plaintiffs add contextual factual allegations to their claim that Defendant had a general business practice of denying collapse claims similar to theirs. In the Second Amended Complaint, Plaintiffs allege that Defendant belongs to the ISO, which is an organization composed of and controlled by insurance companies for the purpose of standardizing the language and interpretation of insurance policy provisions. (2d Am. Comp. ¶¶ 42–44.) Plaintiffs further allege that through its participation in the ISO, Defendant has knowledge of similar cases in which ISO members denied coverage and courts later found that coverage existed under identical policy language. (*Id.* ¶ 47.) Plaintiffs cite one such case by name. (*Id.*)[4] Plaintiffs allege that based on this similar conduct, and based on the function of the ISO to provide its participants with identical, specific policy interpretations, there is an industry-wide practice of denying claims like Plaintiffs', even though such claims are likely covered by the terms of their policy. Although in *Twombly* the Supreme Court rejected an inference of collusion based solely on allegations of parallel conduct, here, Plaintiffs have alleged the existence of an organization in which Defendant is a participant whose main function is to harmonize policy language, interpretation, and application. Based on Defendant's participation in that organization, and based on the conduct of other ISO participants in denying similar claims, Plaintiffs plausibly allege that Defendant followed an industry-wide practice in denying their claim and that additional similar claims from the geographic area served by

---

[4] Plaintiffs' counsel mentions at least ten other similar cases in which he is involved in the Plaintiff's opposition brief (*see* Pls.' Opp'n [Doc. # 31] at 10 n.6), but he has failed to include these cases in the Second Amended Complaint, and thus the Court will not consider these cases in ruling on the pending motion to dismiss.

the J.J. Mottes Company likely had been submitted to and denied by Defendant consistent with this practice. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) ("The *Twombly*, plausibility standard . . . does not prevent a plaintiff from pleading facts alleged on information and belief where the facts are peculiarly within the possession and control of the defendant." (internal citations and quotation marks omitted)). Therefore, Plaintiffs have alleged minimally sufficient facts to sustain their CUIPA/CUTPA claim, Defendant's motion to dismiss Count Three is denied.

### III.     Conclusion

For the foregoing reasons, Defendant's Motion [Doc. # 33] to Dismiss is DENIED.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 29th day of April, 2014.